The Okay Mr. Baron My name is Stephen Baron and my co-counsel Blair Leake and I represent Appellant Austin Police Officer Michael Nissen. I will be speaking to you regarding the force claim against Officer Nissen and my co-counsel will discuss the failure to intervene claim. Now broadly, three important questions abound in this interlocutory appeal on the denial of Officer Nissen's qualified immunity. The first question, can a reasonable police officer view a suspect that fled at 100 miles an hour for 20 minutes in a motor vehicle as an ongoing and immediate threat and any potential surrender as a potential ploy until they are safely secured in handcuffs? Now Appellant Nissen takes the position that this court has already substantially addressed this issue in Salazar v. Molina in 2022. Now the second question, after the chase, can a reasonable police officer in Texas use 90 seconds of soft hand force and prone restraint to place the obese suspect in handcuffs who would allegedly later die in combination due to this comorbidity and the force that the suspect used? Now without having that force analyzed, having that reasonability of that force analyzed as if it were deadly force, the degree of force was deadly force because all reasonable officers should have known that such minimal force had a high likelihood of killing the suspect. Finally, can a late arriving officer reasonably assume that officers who arrived on scene first are using the correct amount of force when evaluating a failure to intervene claim? Now Your Honors, I'll address the deadly force claim first because I think that is probably the most probative on where the district court erred in the first instance. As to the facts, as I briefly mentioned, Javier Ambler fled from police for over 20 minutes in a Hollywood style, high octane car chase at speeds exceeding 100 miles per hour, unknown to all law enforcement during this car chase, Ambler had late stage congestive heart failure and Apelli's experts concede that Ambler's ability merely to survive in a high intensity situation was substantially impaired. There was some suggestion, I think, in one of the briefs that during that chase that he, there were a couple of collisions, maybe, I don't know whether it was with other vehicles or with objects, is that right? Yes, Judge Smith, that's absolutely correct. He crashed approximately three times and I think the exhibit to our summary motion, summary judgment motion reflects that, including one that was captured, the second one that Officer Nissen actually witnessed because Mr. Ambler flew past Officer Nissen when he was trying to deploy stop sticks and it's captured on Austin Police Department's helicopter and you can see his car spin out, go over the pavement and hit some poles. Officer Nissen thought that the car would be disabled at that point, but he managed to keep going after that point and then he had his third and final crash which resulted in the chase ending and the Williamson County deputies catching up with Mr. Ambler. Now contrary to the district court's holding below, all the force that Officer Nissen used on Ambler was clearly captured on two separate body cameras, making this a Scott versus Harris case. There's a dash camera from the deputies and then there's Officer Nissen's body camera and combined, if you lay them out side by side, you can clearly tell all the force that Officer Nissen used on Mr. Ambler. Nevertheless, despite this minimal force captured on the camera, the district court held that a genuine question of fact existed as to if this soft hand force was in fact deadly force. Now this was an error simply because it relies on 20-20 hindsight. No officer on the scene knew that this intermediate or less force, the deputies were using a taser and they used some hard hand strikes, so that's probably intermediate force. But Officer Nissen clearly only used soft hand controls and the most force he ever used was he placed his knee, he did not use his knee to strike Mr. Ambler, he placed his knee on his hand and then later on his shoulder to effectuate handcuffing. And Judge . . . At the time of this incident, he stated that he was having some medical . . . he did signal that he was having some medical issues, so it's not complete 20-20 hindsight. Correct, Judge Douglas. He does state that he cannot breathe and our client, Officer Nissen, admits that he heard him say that. There's a fact question out there and the district court identified that as to if Officer Nissen heard him say, I have congestive heart failure, but Judge, it's not material to the 20-20 hindsight or whether or not a reasonable officer should have known at the time. So Judge, it's not material to 20-20 hindsight because this court has previously stated that the prone position, not hog tying and leaving someone in handcuffs face down, but in Sanders Burns in 2010, this court recognized that the mere prone position to effectuate handcuffing without monitoring cannot be considered deadly force in and of itself. And so, on the two-pronged test of . . . Would it change that if someone . . . let's just assume that he did hear that he said he had congestive heart failure, would it change . . . would the fact be material at that point? So Judge, I think this really speaks to the second grim factor as if, you know, he needs . . . does Officer Nissen need to credit this statement that he's having a medical issue before placing him in handcuffs? Because of the high-speed car chase, Your Honor, this is an issue that is a self-evident truth about policing and that distinguishes Darden, which is another case where this court analyzed someone who died accidentally due to a comorbidity. Now, in that case, qualified immunity was denied, but for a completely different reason than it should not have been denied in this case, namely because of the preceding high-speed car chase. Any reasonable officer could believe that Darden did not engage in any moment where he resisted arrest and no officer had reason to believe that he would engage in ploys. But . . . But then where is the line in the sand? If there was a high-speed car chase and you . . . the facts that we're dealing with here is that there was someone who was suffering from a medical emergency. Once there was a high-speed chase, you just throw anything post-chase out the window? So at what point do you credit his words that he either couldn't breathe or that he was suffering from some sort of a medical emergency? Because it appears that there's a question as to whether or not he was subdued as well, right? That's correct, Your Honor. Where is that line? So the line that we would submit and that the line that I think this court has actually already identified in Salazar v. Melinez is once he's restrained. Because someone who has displayed the desperation to run from police at a hundred miles per hour, a reasonable officer can simultaneously believe that they will engage in the desperation to fight. And they need to be concerned that anything they say, medical emergency or otherwise, could be a ploy designed to allow them more time to engage either again in their desperate flight or engage in a desperate fight and produce a weapon of some kind. And in order to make the scene safe, they need to be in handcuffs. And once they're in handcuffs and so long as the force that they were using was to effectuate placing the suspect in handcuffs, which it clearly was in this case, that is when we need to now credit the medical emergency statements once he's in handcuffs. Because otherwise, officers in the future, after someone has destroyed their credibility by fleeing from police in this outrageously dangerous manner, officers might hesitate to make the scene safe next time. And then this person who's already displayed such dangerous tendencies could produce a weapon or produce something else. And that would be a very tough precedent for officers to contend with in the Fifth Circuit because they're dealing with someone who is engaged in this violent crime. And that was another issue that the district court didn't deal with down below. It relied on Cooper and a series of non-violent case law, Judge Smith, that you wrote in that Cooper v. Brown decision. And you clearly noted in footnote two in that decision that this was applying to cases where a violent crime had not occurred, that subdual was sufficient when there was a non-violent crime, but not when it's a violent crime. And Your Honors, I see that my time is up, and I'll let my co-counsel speak to you about failure to intervene. You've saved time for rebuttal, I believe, Mr. Chief Justice. Yes, Judge Smith. Mr. Lee. May it please the Court, I'm here to speak to you today about the failure to intervene issue. Now, I'm very short for time, but I do have three things that I'm prepared to talk to you about today. Perhaps you can serve as a menu in case you want to jump ahead. The first thing that I want to talk about, though, I think we have to talk about more so than the others, and that is the clearly established law problem. Second prong of qualified immunity requires that the plaintiff meet their burden of actually identifying a case where there are specific facts that would have put Officer Nissen on notice that choosing not to jump in and stop what the deputies were doing, which was stop to enforce a taser strike, basically, would actually offend the Constitution itself. There are no cases that actually squarely govern that. The plaintiffs did not meet their burden in their brief because they cannot meet their burden. Now, in the report recommendation, the Court cites three cases, Ramirez v. Martinez, Carroll v. Ellington, and Newman v. Guidry. None of these cases actually apply once you put them up one-to-one to the case at bar. In Ramirez v. Martinez, there's no violent crime. You're dealing with a different person, a different threat level. When there's no violent crime, you can't competently say, yes, or reasonably say, this is a person who I need to get to handcuffs now. In that case, the officers were going to Ramirez's place of business. They're there to execute a warrant to arrest his sister. He gets in an argument with the officers when they're trying to arrest her. Officer says, turn around, put your hands behind your back, he's going to arrest you. Ramirez refuses. The officer tasers him. So there's no crime there. Then, he puts him in handcuffs, he's on the ground in the prone position, and he once again tasers Ramirez for a second time when he's in handcuffs. So not only do we not have violent crime raise the threat level, but we also have force that is clearly gratuitous. You can't use a taser against someone just because they're refusing to turn around. You can't use a taser against someone who's laying on the ground in handcuffs. None of those things are present in this case. And so Ramirez cannot serve as clearly established law. Second, we have Carroll v. Ellington. This is one where, again, there's no violent crime. The plaintiff was suspected of vandalizing mailboxes. The officer follows him into his house, there's a long scuffle that ensues inside the home. Thirty-five taser cycles happen, numerous strikes. So again, we have, oh, and some of that force is used after he's already in handcuffs. And the court denies qualified immunity for anything and everything that happens after he's in handcuffs. So again, we have a much higher level of force used, and we have a much lower threat level than what officers in this case. Not to mention the fact that neither of those cases actually have a car chase. And finally, we have Newman v. Guidry. This is one where, you know, at least much like Ramirez, there's actually no crime. A passenger's pulled over in a car, it turns out that he himself has some traffic tickets. They ask him to get out of the car, he consents to a search. He makes an off-color remark to the officer, and the officer goes half-cocked and ends up striking him thirteen times with a baton and tasing him three times. So again, we have no crime, you know, it's not a crime to make an off-color remark. And we have significantly more force being used. And so I struggle to see how those three cases could have possibly, you know, put Officer Newman and numerous people at risk, could have put officers at risk and noticed that they can't put them on the ground and handcuff them, or that he couldn't be tased once in his presence to get this person in handcuffs who presents a violent, a potentially violent threat. Now, Hale and Harris v. Chankler are added on in the brief by the accolades. They don't do it either for the same reason. Hale, there's no violent crime. Harris v. Chankler, there's no crime at all. He gets in an argument with an officer, and the officer beats him savagely with a blackjack. The jailer does nothing and provides him no medical care. It doesn't make any sense that Harris could possibly put him on notice. In the Hale case, he's already been harassed by police previously. There's a history of that. They take him outside, accuse him of his strip club doing illegal gambling, search him for weapons. During the search, they slam him on top of the hood of the car. They, quote unquote, ram their fist multiple times into his testicles, and then try to slam his head in the car. Neither of those cases actually have a violent threat or a violent felony involved. And those cases have, frankly, truly gratuitous violence by the officers, which once again could not have put Officer Nissen on notice that what he was doing could be potentially unconstitutional, much less what the deputies had done in his presence could be potentially unconstitutional. Now, the other two cases mentioned in the brief, Green v. DeMoss, Tampa v. Dillon, these are after the Ambler incident. Ambler was arrested in 2019. These happened in 2021 and 2022. Yes, there is some utility in the case law of kind of shoehorning and figuring out if maybe there was some past precedent. But again, these are nothing like the Ambler case. I see I'm about to be out of time. Would you like me to briefly conclude? Well, your time has concluded. Thank you. Thank you. OK, Mr. Edwards. Thank you, Your Honors. May it please the Court. I have the honor of representing Javier Ambler's family in this appeal. And I think one thing that the Court needs to hear about is I heard my friend on the other side say that this was a Hollywood-style car chase. And it was. This was part of a TV show. There were photographers in the backseat of the Williamson County patrol vehicle who decided to pull Javier Ambler off for failing to dim his headlights. Now, he did, upon lights and sirens, he did engage in a high-speed chase. We do not deny, nor did the district court, ignore the fact that that is a serious offense. And on the list of Graham factors, she factored it in, exactly like Darden. Darden was also a serious offense. Darden was a no-knock warrant drug arrest in which there were multiple people in the room in markedly similar circumstances. Now, what my opposing counsel glossed over . . . The difference that was pointed out, as I remember, was that things happened to Darden after he was handcuffed and subdued, right? Well, they had . . . No, in Darden, he was not handcuffed. He was subdued. And he didn't try to escape. He didn't try to escape, just like Javier Ambler did not try to escape. The law, as they are positing it . . . Wait a minute. You're saying he didn't try to escape, but he resisted being cuffed . . . He didn't resist being cuffed. Obviously committing a violent crime by a high-speed dangerous chase. He did commit a high-speed chase. That is a serious, and we'll even say violent crime. It is a severe crime under the Graham analysis. But that was over. He was out of the car. He was down on the ground. He was begging five times. He told the officers, I can't breathe. I can't breathe. Is there a fact issue as to whether he was resisting or having a medical emergency? Yes, there is a fact issue. And not only is there a fact issue, it's a genuine fact issue. The only question for this court is, is it material that someone is not resisting, but is rather begging for help? How can it be a fact issue when we have the video? The Supreme Court's pretty strong about that. Well, no, we can look at that video and see that he was resisting being cuffed. And they kept talking to him about that. Well, again, the court found that there was a fact issue because whether or not a jury can ultimately determine whether or not he was resisting . . . Have you read Scott v. Harris? I have read Scott v. Harris. And this is not even close to the video evidence in Scott v. Harris. This video, if you look at it, the dash cam video, as well as the body cam footage from Officer Nissen, they have gaps. And what is uniquely different, and what the district court pointed out, is that the degree of force that Officer Nissen used cannot be determined on the video. Officer Nissen says, and his counsel say, this was soft, minimal force. I barely touched him. That is contradicted by the video, a, you see Officer Nissen pressing him down into the pavement in a prone position, and medical evidence from a pathologist and a board certified pulmonologist that there was hemorrhaging at the neck consistent with asphyxiation, petechial hemorrhage and hemorrhaging around the neck. What does that have to do with what the officers knew at the scene? The officers knew that Javier Ambler could not breathe. They knew, according to the evidence, because he told them five times. What does that have to do with it? I mean, I don't quite understand. Suspects tell officers things all the time. This guy just committed a serious, dangerous crime. And officers know that sometimes people make exculpatory statements because they don't want to be cuffed or taken away. Why wouldn't an experienced officer be able to take that into account? Well, an officer can take into account the possibility that people are lying, but officers ought to also and are required to take into account the facts that would either support or refute the statement that I can't breathe. This goes to the heart of whether or not Javier Ambler was resisting. And the district court found a material fact issue as to whether or not the degree of resistance. A, did Javier Ambler resist at all? It's not clear because actually, Your Honor, Javier Ambler was dying. He was being pressed into the concrete. He was begging for breath. And the resistance that we're talking about is him pushing his, trying to push his body up. What were the officers then supposed to do at that point? Well, there's evidence in the record. Here's what they were supposed to do. They were supposed to stop. And they were supposed to simply get him up on his, in his side. There are numerous, there's- And he'd be free to try to escape or he'd be free to turn to his vehicle to take a weapon or anything else that might. Or he'd be free to try to assault the officers. I mean, this is over a 400 pound guy. He's pretty, he's pretty strong or potentially pretty strong. All kinds of things could happen. But, but you're saying that the officer in the, in the, in the split second moment of exercise of judgment is just supposed to let him, to let him free. Is that? That's what this court held in. That's what I hear you saying. No, I'm, I'm, I'm suggesting that this court should follow the Fifth Circuit ruling in Darden, in which the exact same argument was made and rejected by the Fifth Circuit. In, in that case, he was saying he could not breathe. Other people were saying he has asthma and he's, he can't breathe. And he actually did get up. But the, they found that that was not resistance. And certainly it wasn't active resistance. Your Honor, is it, is the parade of horribles possible that officers who choose not to kill someone to get them into handcuffs, that someone could flee? I suppose it's possible. But what they're suggesting is they're taking- So the alternative to not putting him in handcuffs is, according to what you just told us, that they put him into handcuffs and therefore he dies. No, no, what- Cuffing is tantamount to, to death or to, to lethal force. In, in this case, proceeding to use the force they used in an effort, and until he got into handcuffs, unequivocally killed him. I mean, the evidence, which you have to take in the, in the light most favorable for the plaintiffs, it did kill him. So a blanket rule, which is what they're asking for, that you do not need to take, take account of what suspects are saying to you, or about what the evidence shows. Until someone is hand, is in handcuffs, if they have committed a so-called violent crime, and let's be honest, there's a difference between reckless driving and, and, and serial murder. But leaving that aside, we don't dispute, he did drive dangerously. Why he was the subject of a car chase, I'll never know. We'll have to speculate about that. We don't know the answer to that. But what we do know is that the- What you're asking us to adopt is to, is to issue probably a published opinion that would say that all a suspect has to do is to say, I can't breathe, or I have a serious medical condition that you may not know about, but I really do. And therefore, you can't cuff me. That would, that would be great going forward, wouldn't it? For all the thousands of law enforcement officers in this circuit to be confronted with that kind of a case law. Well, that's not what I'm suggesting remotely, Your Honor. The only issue on appeal is whether the district court identified factual disputes are material. Correct. So it, it's not going as far as my colleague would suggest. No, no, no, no, no, no, it's not. No, it's not, Your Honor. And here, the district court labeled the degree of force that Officer Nissen used as a factual matter because you can't, contrary to opposing counsel's view, you can't tell on the video how much force Officer Nissen is using. And Officer Nissen knew and was trained that that type of maneuver, pressing some, grabbing them by the neck, pressing them into the ground, that that could kill someone. He testified to that, he received training from the Austin Police Department that that was a dangerous maneuver and could lead to death by asphyxiation. And the medical evidence suggests that that did, in fact, kill him. Now that is a question of deadly force. The easiest way for this court to uphold this opinion is to simply find that there are material fact issues as to whether or not Officer Nissen used deadly force. And the Flores case makes it crystal clear that whether, whether a suspect, whether officers used deadly force is a fact issue. Judge Hightower and Judge Pittman found that that was a fact issue here. That is material to the analysis. Okay, the reason why saying, the reason why the fact that Javier Ambler told the officers he had congestive heart failure twice, and including Officer Nissen, and then told five times that he couldn't breathe, was to explain why he was doing what he was doing, which was moving up and trying to, trying to get the air into his body. Officer Nissen was close enough to hear that breathing difficulty. This isn't a question of do police officers have to, have to ignore potential lying. This is a case about whether or not this court should, unfortunately, violate its dictates to not render into the world of genuineness at this stage. But that's exactly what Scott versus Harris tells us not only we should do, but we have to do. It doesn't matter what the district court said or thought if we can look at the video and tell what happened. Believe me, all three of us will look carefully, have already done so, have looked at the video. We do not defer to the fact that the district court found a genuine issue of material fact. . s t s t . .  . . . . When the police first arrived at the house the team  down the door yelled and ordered everyone to get down. A large man, later identified as Darden, was kneeling on the seat of a couch near the door when the officers first entered and he immediately raised his hands in the air. How can you possibly try to tell us that these two cases are similar? Well, the only difference is what happened before. If Darden had previously been in a high-speed chase and then gone into his apartment and then the officers had come they become nearly identical. But in the, again, Darden was a black man.  would, Mr. Darden was choked. Mr. Ambler, effectively, was choked, albeit from reverse, with the hands on the neck pressing down in. In Darden, the officers pressed his face into the ground. Here, the officer Nissen pressed Javier Ambler's face into the ground. In Darden, they pressed him into the ground in a face-down position. Here, Javier Ambler was pressed down in a face-down position. Darden was not willing to be handcuffed and was struggling and actually got up. Here, Javier Ambler was struggling for his life. And I would caution you to really watch that video because, again, he is in distress. The evidence suggests that he is in distress and that any reasonable officer would look at what he's doing and see distress. And that is not only from the video, that is from the officers. Officer Nissen himself testified that if he had heard Javier Ambler say that he had congestive heart failure, he would have acted differently. That is from the medical providers that suggest that what he did was dangerous and approximately killed him. And it is from the Austin Police Department's witnesses saying that he was trained not to do this. He was trained that the restraint he used was dangerous. And just like in Darden, they pulled his hands behind his back and he died during the arrest. To clearly establish leaving aside different views of qualified immunity, there is a constitutional violation here. It is excessive force. Were they entitled to cuff him under any circumstances? If so, how should they have gone about that? Yes, they were entitled to cuff him. No one is suggesting that they shouldn't cuff him. The manner in which they cuffed him was dangerous in this case. In the Joseph case, proportionality matters. Again, there is a line in there that you can't do a $5,000 punishment for a $5 crime. Here, the manner in which they used force amounted to deadly force. Deadly force that this officer reasonably could foresee because he was trained that doing these types of maneuvers can cause this exact type of death. Getting back to the policy aspect, and Judge Weiner, I think you're exactly right. He acknowledged that he did hear him say he couldn't breathe. He did hear him say he couldn't breathe numerous times, yet proceeded anyway. What he didn't hear was that Javier Ambler also told him he had congestive heart failure. And what he testified to was that if he did hear that he couldn't breathe,       again. And he testified to that he could not breathe again. He testified to that he could not breathe again. And therefore, he was allowed to be a victim of excessive force. And  Darden spoke directly to officer it is a jury question whether reasonable officer should credit what the individual is saying. We are not suggesting that in all instances officers have to believe what suspects say. But when the evidence suggests that what the suspect is saying is correct and their life is literally on the line, they should consider it. They shouldn't act in disregard to it. And there were very easy police solutions to this problem that also would have enabled them to handcuff him. Sitting him up does not change the fact that he gets handcuffed. They can handcuff him in the front. They can handcuff him sitting up. There are lots of options. That's just not plaintiff's counsel saying that. Plaintiff's police practices expert offered that into the record. And that is another dispute. But again, the genuine disputes found by the court, the degree of Nissen's force, the video does not speak to that. They keep saying it's minimal. Plaintiffs say it's deadly. The court found that there was a fact issue on that. The Flores case speaks directly to that. That is a factual dispute. It is material. Darden is as close a case as I've come up before this court on qualified immunity that I've ever found. The only distinction is there wasn't also a high speed chase. That's it. Suspect kneeling calmly on a couch. He wasn't kneeling calmly, Your Honor. He was struggling. He was not kneeling calmly in Darden. This wasn't a situation where the cops just came in and beat him. That's not the case, Your Honor. Darden was struggling. Darden was begging for help. People were saying he had asthma. People were saying he couldn't breathe. And the police ignored that and proceeded anyway and Darden died. That is not  case. He was kneeling on a couch near the door. He immediately raised his hands in the air. That is what he immediately did. That's what he did. He wasn't there when that happened, Your Honor. But Darden is dead on point. It is just simply incorrect to suggest that he was just calm as can be right there. And I do see my time is up and I do very much respect this Court's consideration of this issue. If you have any more questions, I'm happy to answer them. But I understand that my time has passed. Thank you, Mr. Edwards. Okay, Mr. Barron. What preceded the surrender matters. A reasonable officer will have little cause to doubt the apparent surrender of a compliant suspect who is not engaged in the crime. If a suspect has put officers and bystanders in harm's way to try and evade capture, it is reasonable for officers to question whether the now cornered suspect's purported surrender is a ploy. That's especially true when a suspect is unrestrained in close proximity to officers and potentially in possession of a weapon. That is a direct quote from this court's precedent in Salazar v. Molina, a published opinion from 2022, and cert was denied by the Supreme Court in 2023. Doesn't Darden tell us that the issue of whether or not reasonable officers in a situation like this should be decided by the jury? No, Your Honor, because it's indisputable by the video evidence that Ambler was resisting. What my friend on the other side is You call resist, they call a medical emergency. Why shouldn't the jury decide that instead of us? Well, because the video clearly shows that. The question that plaintiffs would have Officer Nissen submit to a jury is Officer Nissen needed to read Ambler's mind and know that he was telling the truth and that he wasn't resisting because he wanted to continue his dangerous flight or he was wanting to engage in a dangerous fight in order to continue his life. Why should the jury decide that instead of Ambler's  know that he was telling the   wasn't  because he wanted to engage in a dangerous flight or he was wanting to engage in a dangerous flight or he was not resisting because he was trying to do some kind of accommodation. It seems like Darden from the passage that Judge Smith read there was a question if he surrendered and the officers decided they were going to continue in the manner they had which was enter an apartment with a battering ram and essentially take everyone prisoner. And so this case cannot stand for clearly established law in Officer Nissen's case if we want to talk about the second prong because what precedes the surrender matters. Darden is a man in an apartment. Javier Ambler is a man in a dark neighborhood at night after a 20 minute 100 mile an hour. What happens before the surrender matters. Correct. There was a high speed chase but the fact that he at some point surrendered got out of the car, raised his hands up makes no difference. First of all my opposing counsel is correct. Officer Nissen was never there on scene and the video camera clearly shows he did not see Ambler in the moments the chase ended. He walked up on a scene about 30 seconds after the Wilco. He saw a part of the chase. Javier Ambler sped by him as he was trying to deploy stop sticks to immobilize his car. That's when Officer Nissen witnessed the second crash that Javier Ambler engaged in which this court will be able to see on the Austin Police Department's helicopter footage where he spun out over poles over a sidewalk where pedestrians walked and came to a halt after he hit some poles. The idea that Javier Ambler and Darden are the same person or in the same position, I cannot overstate enough that that is not the case. In Salazar, there was additionally a whole section of language which said factors that fit Javier Ambler hand to glove. He's unrestrained, at night, in the open, in close proximity to officers and potentially in possession of a weapon. What my friend on the other  the podium said was that he was having a medical emergency. Reasonable officers were not required to credit that and couldn't reasonably believe that it was a ploy until he was in handcuffs because the alternative is the nightmare scenario that I think Judge Smith has envisioned. They have to put him in handcuffs. He's a desperate man attempting to escape custody and those kinds of desperate people, unlike Darden who had never done this, might continue that desperation by pulling a gun or something else. Thank you, Your Honors. Thank you, Mr. Barron. Your case is under submission. Last case for today, Sugg v. Midwestern